UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL NORWOOD,                  : CIVIL NO. **1:05-CV-02410**
                                  :
        Plaintiff                 : (Judge Caldwell)
                                  :
    v.                            : (Magistrate Judge Smyser)
                                  :
FRANK STRADA,                     :
                                  :
        Defendant                 :

## REPORT AND RECOMMENDATION

On November 21, 2005, the plaintiff, a prisoner proceeding *pro se*, commenced this civil action by filing a complaint. The defendant is Frank Strada, an associate warden at the United States Penitentiary at Lewisburg, Pennsylvania.

The plaintiff alleges the following facts in his complaint. The plaintiff is a member of the Nation of Islam and, since March 23, 2003, prison officials at USP-Lewisburg have been providing him with a diet consistent with the tenets of his religion. On May 15, 2005, at approximately 12:45 p.m., the prison population at USP-

Lewisburg was placed on lockdown status and all prisoners were confined to their cells.

On the evening of May 15, 2005, the plaintiff was served a bagged meal consisting of cold cut meat, prison-baked rolls and cheese, none of which was certified as kosher or halal as required by the dietary laws of the Nation of Islam. The plaintiff did not eat the bagged meal; instead, he fasted. At breakfast on May 16, 2005, the plaintiff was given a bagged meal which consisted of boiled eggs that were cooked with religiously uncertified cooking utensils, milk and a muffin.

At approximately 11:30 a.m. on May 16, 2005, the defendant, while making a walking tour of the cellblock, stopped at the plaintiff's cell. The plaintiff complained to the defendant that, for the most part, the items contained in the bagged meals, particularly at lunch and dinner, consisted of non kosher/halal foods and that with minimal strain on prison resources he could be provided a

2

bag meal during the lockdown which consisted of religiously certified items such as milk, wheat bread, fruit, prepackaged peanut butter and jelly, etc.  The defendant responded to the plaintiff by stating: "If you don't like the bag lunch, don't eat it."   The plaintiff replied by warning the defendant that he was in violation of this court's February 10, 2003 ruling in *Norwood v. Romine,* 1:CV-01-1005 (M.D.Pa.).[1]

The plaintiff did not receive a religiously-certified meal until the morning of May 18, 2005.

The plaintiff claims that the defendant violated his First Amendment right to a diet consistent with his religious beliefs and the Religious Freedom Restoration Act (RFRA).  The plaintiff is seeking compensatory and punitive damages.

---

1.  In *Norwood v. Romine,* 1:CV-01-1005, the plaintiff complained that the Warden at USP-Lewisburg was failing to provide him with a diet consistent with his religious beliefs.  By a Memorandum and Order dated February 10, 2003, the undersigned denied the Warden's motion for summary judgment.  A jury trial was subsequently held in *Norwood v. Romine*, and the jury returned a verdict in favor of the Warden.

On February 7, 2006, the defendant filed a motion to dismiss or, in the alternative, for summary judgment. On February 21, 2006, the defendant filed a statement of facts, documents and a brief in support of his motion. On March 1, 2006, the plaintiff filed a brief in opposition to the defendant's motion and a declaration. On March 16, 2006, the defendant filed a reply brief.

In his brief in opposition to the defendant's motion, the plaintiff indicates that he is withdrawing his claim under the First Amendment. Thus, the only remaining claim is the plaintiff's RFRA claim.[2]

RFRA "prohibits the Federal Government from substantially burdening a person's exercise of religion,

---

2. Although not set forth in his complaint under the section of the complaint labeled "Cause of Action," the plaintiff does allege that the defendant violated this court's February 10, 2003 ruling in *Norwood v. Romine,* 1:CV-01-1005. We do not construe the complaint as attempting to state a claim based upon the February 10, 2003 ruling in *Norwood v. Romine, supra.* In any event, the February 10, 2003 Memorandum and Order in *Norwood v. Romine* merely denied the Warden's motion for summary judgment. A claim upon which relief may be granted would not be stated on the basis of the February 10, 2003 Memorandum and Order of itself.

unless the Government 'demonstrates that application of the burden to the person' represents the least restrictive means of advancing a compelling interest." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 126 S.Ct. 1211, 1216 (2006).

The defendant contends that the complaint fails to state a RFRA claim upon which relief can be granted.

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint; the court must decide whether, even if the plaintiff were able to prove all of his allegations, he would be unable to prevail. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In connection with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the burden is on the moving party to show that there is no actionable claim. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When deciding a motion to dismiss, the court must accept all material allegations of the complaint as true and draw all inferences in the light most favorable to

5

the plaintiff. *Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449 (M.D. Pa. 1991).  However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Id*. at 449-50.  A complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

     The defendant contends that the complaint fails to state a claim upon which relief can be granted because the plaintiff has not pled that a substantial burden was placed on the exercise of his religion.

     The defendant asserts that the plaintiff's claim is that he missed one meal on May 15, 2005 and that, for the most part, two of the three meals on May 16th and 17th were not acceptable to his religious diet.  As the defendant construes the complaint, the plaintiff does not complain

about the breakfast meals on May 16th and May 17th and the plaintiff concedes that some of the items in the lunch and dinner meals on those dates were not unacceptable to him. The defendant argues that the plaintiff has not alleged a basis to colorably support a claim that his exercise of his religion was substantially burdened.

    We do not agree with the defendant that the plaintiff is not complaining about the breakfast meals on May 16th and May 17th. The plaintiff specifically alleges that the breakfast meal on May 16, 2005 consisted of boiled eggs that were cooked in religiously uncertified cooking utensils, along with milk and a muffin. We think that the plaintiff is alleging that the eggs were not acceptable to his religious diet. It is not clear from that allegation whether or not the milk and muffin were or were not acceptable to the plaintiff's religious diet. In deciding a motion to dismiss, the court must draw all inferences in the light most favorable to the plaintiff. Drawing inferences in the light most favorable to the plaintiff, he

is alleging that the breakfast meals on May 16th and May 17th did not comply with his religious diet requirements.[3]

The plaintiff alleges that he complained to the defendant that, for the most part, the items contained in the bagged meals, particularly at lunch and dinner, consisted of non kosher/halal foods. The plaintiff's use of the phrase "for the most part" indicates that there may have been some items in the meals that were kosher/halal. The only two meals as for which the plaintiff lists the items included in the bag are the evening meal on May 15th and the breakfast meal on May 16th. The plaintiff specifically alleges that none of the items in the evening meal on May 15th was religiously certified as kosher or halal, and, as mentioned above, he alleges that the eggs in the breakfast meal on May 16th were cooked using religiously

---

3. Since the defendant's argument is that the complaint fails to state a RFRA claim upon which relief can be granted because the plaintiff has not alleged a substantial burden on the exercise of his religion, we do not consider documents outside the pleadings. We note, however, that in his declaration the plaintiff states that his complaint is based on all three meals served on May 16th and May 17th. The plaintiff further states that none of the items in the meals served on May 16th and May 17th was religiously certified with the exception of the milk and hot cereal packet served with breakfast. He also states that the hot cereal was not edible because prisoners are not provided with hot water.

8

uncertified utensils.  From the allegations of the complaint it is not clear what, if any, items in the meals on May 16th and 17th were religiously acceptable to the plaintiff.  Drawing all inferences in the light most favorable to the plaintiff, we  conclude that the plaintiff is claiming that most of the items in the three meals on May 16, 2005 and May 17, 2005 were items that he was prohibited by his religious beliefs from eating.

We construe the complaint as claiming that the plaintiff was not able to eat the evening meal on May 15, 2005 and most of the items in the meals on May 16, 2005 and May 17, 2005.  That is a total of seven meals.  The question is whether the denial of seven meals that are in accord with a prisoner's religious beliefs amounts to a substantial burden on a prisoner's exercise of his religion.

A burden on the exercise of religion is substantial when it influences the adherent to act in a way that violates his sincerely held religious beliefs. *Williams v. Bitner*, 359 F.Supp.2d 370, 375 (M.D.Pa. 2005)(Conner, J.)(addressing the Religious Land Use and Institutionalized

9

Persons Act of 2000 which contains language almost identical to RFRA).

A prisoner who is consistently not provided meals in accordance with his religious beliefs is substantially burdened in the exercise of his religion.  However, missing only a few meals may not amount to a substantial burden on a prisoner's exercise of his religion.  In this case, we are dealing with seven consecutive meals.   A reasonable fact finder could conclude that not being able to eat seven consecutive meals is a substantial burden on a prisoner's exercise of his religion.   Accordingly, accepting all material allegations in the complaint as true and drawing all inferences in the light most favorable to the plaintiff, as we must when deciding a motion to dismiss, we can not conclude that the plaintiff has failed to plead a substantial burden on his exercise of his religion.  Therefore, it will be recommended that the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted be denied.

The defendant contends that providing inmates a variety of foods in the context of an emergency feeding program is the least restrictive means of meeting the compelling interest of feeding the entire prison population.  We construe the defendant to be arguing that he is entitled to summary judgment on the plaintiff's RFRA claim.[4]

"'Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.'" *The Circle School v. Pappert*, 381 F.3d 172, 177 (3d Cir. 2004)(quoting *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 n.3 (3d Cir. 2000)).

The following facts are not in dispute.

---

4. We note that the defendant's least restrictive means/compelling interest argument is actually contained in a subsection under a section of his brief entitled "Norwood Fails to State a Claim under RFRA."  However, because the defendant cites material outside the pleadings, we construe the defendant to be arguing that he is entitled to summary judgment on the RFRA claim.

11

On May 15, 2005, at approximately 12:45 p.m., USP-Lewisburg initiated an emergency lockdown of the entire institution following an altercation between inmates representing certain geographical and racial groupings. *Defendant's Statement of Facts at ¶6.* Staff received intelligence that other inmates affiliated with these groups might become involved, thereby escalating the situation into an institution wide disturbance. *Id. at ¶7.*

During normal institution operation, inmates assigned to job assignments in the Food Service Department perform all food preparation and serving needs. *Id. at ¶8.* Approximately 210 inmates are assigned to the Food Service Department inside the penitentiary, which runs three shifts around the clock, seven days per week. *Id. at ¶9.*

USP-Lewisburg houses approximately 1400 inmates. *Doc. 22, p.3 n.1.* In an emergency lockdown, all inmates are confined to their cells and, initially, all inmates are fed inside their cells. *Defendant's Statement of Facts at ¶11.* During an emergency lockdown when no regularly assigned inmate workers are available, a small number of

12

staff must cover the food preparation and service duties of the Food Service Department. *Id. at* ¶12.

Since the May 2005 emergency lockdown resulted from an unforeseen inmate assault, food service staff had no advance notice to order or prepare individual inmate meals capable of being served in the cell blocks. *Id. at* ¶13. Inmates were provided with "bag meals" delivered to their cells in brown paper bags. *Id. at* ¶14. These meals consisted of a variety of food, such as peanut butter, fruit and pre-packaged cereal, that the institution had in its stores. *Id. at* ¶15. The food chosen for the brown bags was nutritious and simple to prepare, package, and serve. *Id. at* ¶16. Many of the items, such as peanut butter and prepackaged cereals, were taken from the religious diet lines. *Id. at* ¶17. All inmates were provided with the same meals. *Id. at* ¶18.

At the beginning of an emergency lockdown, the goal is simply to get meals to the inmate population that are neutral to any "special diets" that are available during normal institution operations. *Id. at* ¶19. If it appears the lockdown will be prolonged, arrangements may be made to

13

feed inmates outside their cells in small groups if intelligence indicates this can be done safely. *Id. at* ¶20.

The issues surrounding the May 2005 lockdown were resolved quickly, and the institution resumed normal operations, including normal inmate feeding procedures, on May 18, 2005. *Id. at* ¶21.

There are three associate wardens assigned to USP-Lewisburg. *Id. at* ¶22. Each associate warden is assigned responsibility for several departments within the institution. *Id. at* ¶23. The defendant is the Associate Warden of Programs at USP-Lewisburg. *Id. at* ¶ 24. The Food Service Department is not one of the departments over which the defendant has supervisory authority. *Id. at* ¶25.

The defendant generally recalls the plaintiff making some comments about his meals during the May 2005 lockdown. *Id. at* ¶26. Although the defendant does not recall the specific date or time, it was likely when the defendant was making rounds of one of the many housing units and hearing complaints and comments from hundreds of

14

inmates. *Id. at* ¶27.  Whenever an institution is on emergency lockdown, it is a hardship for both inmates and staff. *Id. at* ¶28.  Many inmates were not involved in causing the situation that led to the lockdown and thus, were resentful of the restrictions the lockdown caused. *Id. at* ¶ 29.  It is likely that the defendant's response to the plaintiff's complaints was similar to what the plaintiff alleges: that it was his choice to eat or not eat his meal, as it is for all inmates. *Id. at* ¶30.

The defendant contends that providing inmates a variety of foods in the context of an emergency feeding program is the least restrictive means of meeting the compelling interest of feeding the entire prison population.

In the context of an emergency lockdown, simplifying the feeding process so that it can be handled by the guards without the assistance of inmate workers is a compelling governmental interest.  However, the defendant has not met his burden of establishing that feeding the

15

inmates the bagged meals that were fed in this case was the least restrictive means of advancing that interest.  The defendant has not established that there was any reason why the bagged meals provided could not have contained kosher/halal foods.  Accordingly, the defendant is not entitled to summary judgment on the plaintiff's RFRA claim.

The defendant also contends that the plaintiff fails to state a *Bivens*[5] claim upon which relief can be granted and that he is entitled to qualified immunity from the plaintiff's *Bivens* claim.  Since the plaintiff has withdrawn his First Amendment claim, we need not address those arguments.[6]

---

5. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens,* the Court held that when a federal agent acting under color of his authority violates an individual's constitutional rights a cause of action for damages may arise against such agent.

6. Although acknowledging that the plaintiff withdrew his First Amendment claim, the defendant continues to argue in his reply brief that he is entitled to qualified immunity from the plaintiff's *Bivens* claim.  In this case, the plaintiff's First Amendment claim was his *Bivens* claim.  Since the plaintiff has withdrawn his First Amendment claim we do not address the defendant's arguments regarding the plaintiff's *Bivens* claim.  We note that the defendant has not argued
(continued...)

16

Based on the foregoing, it is recommended that the defendant's motion (doc. 14) to dismiss or, in the alternative, for summary judgment be denied.  It is further recommended that the case be remanded to the undersigned for further proceedings.

                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  April 20, 2006.

---

6.  (...continued)
that he is entitled to qualified immunity from the plaintiff's RFRA claim.